```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                              12 CR 551 (KMW)

 5   ALEXANDER WRIGHT,

 6                  Defendant.

 7   ------------------------------x

 8                                          New York, N.Y.
                                            October 23, 2013
 9                                          10:03 a.m.

10
     Before:
11
                       HON. KIMBA M. WOOD,
12
                                            District Judge
13
                            APPEARANCES
14

15
     U.S. DEPARTMENT OF JUSTICE
16   ANTITRUST DIVISION
          Attorneys for the Government
17   BY:  KALINA M. TULLEY
          JOHN W. VANLONKHUYZEN
18
     KOBRE & KIM
19        Attorneys for Defendant
     BY:  STEVEN G. KOBRE
20        SEAN P. CASEY
          SCOTT MCCULLOCH
21

22

23

24

25
```

1              (In open court)

2              (Case called)

3              THE COURT:  We are here for the sentencing of
4     Mr. Wright.  And I need to begin by asking defense counsel,
5     have you had an opportunity to review the presentence report
6     with your client?

7              MR. KOBRE:  We have, your Honor.

8              THE COURT:  And are there changes that you would still
9     like made to it?

10             MR. KOBRE:  Yes, your Honor.  We had submitted a
11    letter on September 19th to the Probation Department, and had
12    them forward that letter to your Honor on October 18th of this
13    year.  And the combination of those letters I think adequately
14    state our request to changes, including those to the guideline
15    range obviously.

16             THE COURT:  Yes.  I noted that the changes had -- most
17    of them had not been made.  Do you know why not?

18             MR. CASEY:  Your Honor, our understanding is the
19    government and the defense put in changes to the PSR, and they
20    weren't taken up by probation at the time.

21             THE COURT:  All right.

22             Do any of you have objections to my making the changes
23    requested?

24             MR. CASEY:  We don't, your Honor.

25             THE COURT:  If you need time to look through them,

1    take your time.
2             (Pause)
3             MS. TULLEY:  Your Honor?
4             THE COURT:  Yes.
5             MS. TULLEY:  With respect to some of counsel's
6    requested changes to the guidelines, the government understands
7    your ruling at the prior sentencing, and we respect that.  But
8    the government continues to respectfully disagree with that
9    ruling and, therefore -- the PSR had set out both the
10   government's view of the guidelines and the defendant's view.
11   And to the extent that they are asking to change the view
12   before you've made your rulings, we object to that.
13            THE COURT:  Normally, I deal with that type of
14   controversy by simply amending the report to say if it doesn't
15   already say the government contends X, the defense contends Y
16   based on the following.
17            MS. TULLEY:  Okay.
18            THE COURT:  Are there any other changes to which you
19   object?  These are in the September 20, 2013 letter from
20   defense counsel to Don Doino.
21            MS. TULLEY:  No, your Honor.
22            THE COURT:  All right.  I will make those.
23            I have reviewed the sentencing submissions, including
24   the government's 5K1.1 letter.  I take it the government now
25   moves.

1              MS. TULLEY:  Yes, your Honor.  The government moves
2     for a 5Kl departure based on Mr. Wright's substantial
3     assistance in our investigation.
4              THE COURT:  All right.  Thank you.
5              I would be glad to hear anything that defense counsel
6     and defendant wish to say with respect to sentencing.
7              MR. KOBRE:  Thank you, your Honor.
8              Your Honor, first, I first recognize that there's been
9     a substantial amount of filing in this case as it relates to
10    sentencing, specifically as it relates to our memorandum that
11    was filed, and also the government's 5K, which I think was
12    forthright and extensive.  And we thank them for that.  And
13    because there's been a lot written, and we go into an
14    exhaustive detail under the factors of 355 --
15             THE COURT:  35 --
16             MR. KOBRE:  -- 3553(a), I'm not actually going to
17    rehash that.
18             We thought that what might be helpful for your Honor
19    is just a little perspective of who Mr. Wright is, and why we
20    think that a sentence of probation is the appropriate sentence
21    as the Probation Department had recommended.
22             Your Honor, I've actually known Mr. Wright for six
23    years now.  I came to know him through when this investigation
24    first began, actually even beforehand.  And I was trying to
25    think of the words to sort of describe to your Honor sort of

1    who he is.  And I thought some of the ways to describe would be
2    a salt-of-the-earth person.  He's thoughtful, kind, sensitive,
3    humble, genuine.  He has tremendous integrity.  And I think in
4    my experience, he's really someone who I think I would really
5    say sort of is set apart from many of our other clients that
6    we've come in contact with; is someone who just really is a
7    good person.  And our views are actually corroborated by the
8    letters that were submitted and, frankly, I think the view of
9    most that have dealt with him.
10             I think we could make no mistake that he has
11   tremendous remorse, and he's going to tell you about that
12   remorse today; that he's learned his lesson.  Included in that
13   lesson is the lesson to stand up for what's right, stand up to
14   pressure.  And even though, as I know your Honor has known, as
15   your Honor had the opportunity to hear him testify, that there
16   were even efforts that he made to try to stand up for what was
17   right.  Obviously in the future he's going to have to go the
18   whole way and to extricate himself from the process.
19             As to his importance to the government's case, your
20   Honor had the opportunity to hear his testimony.  I would just
21   note that even in examining the government's summation in the
22   UBS case, I think it was in the first or second paragraph that
23   they were citing to conversations that Mr. Wright had testified
24   to, which I think underscores their view of the importance of
25   his cooperation and the veracity of his testimony.

1          As the PSR indicates and we can attest, he's been
2  under tremendous stress since this case began, and this case
3  has caused him great stress.  Since his son was born five years
4  ago, we can personally attest to the fact that the anguish and
5  concern about Alex's future and how he is going to provide for
6  his son's future has been sort of an overhang for the last five
7  years of his son's life.
8          You'll also note, your Honor, from one of the
9  submissions that prior to him pleading guilty on his own, he
10 decided to resign from his company at the time, and really for
11 the reason that he didn't want to put his employer in an
12 awkward position of having to do something about it, and he
13 felt it wasn't fair to them.  And what I think speaks volumes
14 to the type of person he is, the company ultimately wound up
15 reengaging him, despite the fact that he ultimately pleaded
16 guilty.
17         As for the factors that support probation, he's
18 accepted responsibility and provided extraordinary cooperation.
19 We detailed the hours of cooperation and the various cases.  He
20 has provided primary care to his mother and provides care to
21 his son.  He's demonstrated remorse, I think, from listening to
22 the tapes both during the offense and after the offense,
23 certainly.  There's certainly no need for deterrence; he's had
24 no criminal history.
25         And I think from the nature of the offense itself,

1  one, I would submit your Honor could feel comfortable that he
2  certainly isn't going to step into harm's way again.  There is
3  no danger to the public; it was, again, evidenced by his lack
4  of criminal history.
5          And just the last factor, there's no need for
6  vocational training that would otherwise be supplied.
7          So we submit, your Honor, that a sentence of probation
8  would be appropriate.
9          More specifically, as your Honor knows from our
10 letter, because we believe that the range is zero to six, and
11 therefore the probation range is one to five, I believe, we
12 would ask your Honor to sentence him at the bottom end of that
13 range of probation.  I note that the Probation Department says
14 two years.  We would submit, your Honor, that one year -- we
15 would ask you to consider one year in the sense that Mr. Wright
16 certainly has suffered quite a bit, has contributed quite a
17 bit, and, frankly, to some extent might, we would submit, it
18 would be a waste of court and the system's resources, that
19 there's really very little that we need for a second year of
20 probation.
21         As it relates to the fine, we submit, your Honor, that
22 the range is 1,000 to 10,000.  That was a change we had
23 actually asked to be made.  Probation just misstated the range
24 that we had set out.  And because the range is 1,000 to 10,000,
25 we would ask that your Honor consider a fine range that is

1   towards the bottom end of that range -- excuse me, a fine range
2   that's toward the bottom end of that range.
3           As restitution, I note that probation has indicated,
4   the government has indicated that that's been satisfied
5   already.
6           And then the last thing, your Honor, I'd just note
7   that as to drug testing, because the report indicates that
8   there has been no recent history of any drug use, I would ask
9   that your Honor consider suspending the drug testing.
10          THE COURT:  I note on Page 11 of your October 16
11  submission you state that Mr. Wright stands by his agreement
12  with the government.  This is Footnote 3, with respect to the
13  negotiated restitution amount.  Is the $29,600 figure what
14  you've been referring to?
15          MR. KOBRE:  Yes, your Honor.
16          And just to be clear about that, I believe from a
17  legal perspective because there is no restitution to be made,
18  as the victim has been made whole.  The reason why we indicated
19  that, frankly, is because it was a prior agreement we'd made
20  with the government; so conceptually we didn't want it to be
21  interpreted that we were sort of pulling a fast one in the
22  sense that we had agreed to something, and now saying we are
23  not responsible.
24          But in light of your Honor's inquiry, we don't believe
25  restitution is appropriate because the victim has been paid.

1   But that is why it's inserted into a footnote.  We wanted to
2   recognize that so the government, they didn't think that we --
3              THE COURT:  I'll hear from the government on that.
4              MR. KOBRE:  All right.  Thank you.
5              THE COURT:  Good.  Nothing else?
6              MR. KOBRE:  Nothing else, your Honor.
7              THE COURT:  All right.
8              Mr. Wright, I'd be glad to hear anything you wish to
9   say.
10             THE DEFENDANT:  Thank you, your Honor.
11             Over the years, I've thought a lot about what I would
12  say here at this moment.  I owe the Court and my family and
13  friends, some of whom are here today, some kind of statement,
14  and a statement furthermore made in a public and official
15  setting like this one.
16             Your Honor, I'm very sorry for what I've done.  I
17  regret that I betrayed the faith placed in me by my colleagues
18  and clients.  I regret my betrayal of the code of conduct that
19  governed working in the markets that I traded in.  And however
20  abstract that notion of the market may seem, I realize that, in
21  fact, my conduct has done real harm to this important system of
22  trust, and that that harm is real and widespread.
23             I regret also, in a different way, the pain that I've
24  caused my family and friends because of what I did.  And that
25  is another betrayal, but one of a different order.  I surely

1    don't deserve the love and support that I have received and
2    continue to receive from them.  And the fact that I do fills me
3    daily with an odd combination of gratitude and shame.  I'm not
4    sure what parts of me would have survived the past few years
5    without these people.
6           Finally, I feel terrible guilt about the many unknown
7    disadvantages I've conferred on my young son by breaking the
8    law and becoming a felon.  I've answered in my mind a million
9    different versions of his future questions about this, but I
10   still don't know how I will tell him that I broke the law, that
11   I deserved and received punishment for it, and that much of the
12   damage from my actions is permanent.  And I feel this last part
13   keenly because I can't ever really make this right.  I can't
14   undo what I've done.  And that fills me with regret and shame.
15          I've been fortunate to find some people who are
16   willing to give me a chance to do something meaningful and
17   worthwhile with my life, and I'm very grateful to them for that
18   chance.  And I'm not going to disappoint them.
19          So I will safeguard whatever trust other people choose
20   to put in me, and I will try to get back to being the person I
21   had long thought myself to be and had so very much wanted to
22   be.
23          Thank you, your Honor.
24          THE COURT:  Well, thank you for that eloquent
25   statement.

1            You can tell your son that the judge who sentenced you
2    found your testimony at trial very credible, very forthright,
3    and, as the government has indicated, of substantial assistance
4    to them.
5            Would the government like to be heard?
6            MS. TULLEY:  Just briefly, your Honor.
7            I don't mean to quibble, after all that you've heard
8    on this, but just one thing that I'd like for the record to be
9    accurate, Mr. Wright testified at Page 1903 of the transcript
10   that he was fired from J.P. Morgan, and that came after he did
11   not cooperate in their internal investigation.  And I'm not
12   putting that out there in any way to influence your sentencing,
13   merely to make sure the record is accurate.
14           The government essentially would like to rest on our
15   papers.  We've put forth, I think, a very fair and detailed
16   explanation of his cooperation.  There is absolutely no
17   question in our mind that he has provided substantial
18   cooperation in our investigation, and we rest on the papers
19   that we've submitted.
20           THE COURT:  Thank you.
21           MR. KOBRE:  Your Honor, may I -- I just want to make
22   sure -- I don't want the Court to think that I've tried to
23   mislead the Court or the government.
24           My reference to the resignation was not in reference
25   to J.P. Morgan.

1            THE COURT:  No, I know that.  It was to a later
2   employer.
3            MR. KOBRE:  To Nexus.  Exactly.
4            THE COURT:  I understood that.
5            MR. KOBRE:  Thank you.
6            THE COURT:  And I understood the cooperation came late
7   in the game, but was enormously helpful when it came.
8            MR. KOBRE:  Thank you.
9            THE COURT:  I begin, as I must, by calculating the
10  guideline level.  I recognize the numbers that make up the
11  government's total offense level of 19 and the offense level of
12  8, which is based on my own findings at earlier sentencings.
13  Whether the offense level is viewed as 19 or as 8, Mr. Wright's
14  very substantial forthright assistance to the government would
15  lead me to depart downward to a sentence of probation.
16           I'll note that I accept as the correct offense level
17  Level 8 and Criminal History Category I.  But I acknowledge the
18  government's 19.  I just want it to be clear that even were I
19  to choose the government's number of 19, only a departure down
20  to probation would correctly recognize the fullness of
21  Mr. Wright's cooperation and assistance to the government.
22           I'll move on to the 3553 factors.
23           The crime, as Mr. Wright described so eloquently, was
24  very extensive and very -- it actually undercut confidence, I
25  think, in this market.  And that's a very substantial public

1   wrong.
2          Moving to Mr. Wright's history and characteristics.
3   He has had many advantages of good schools, and you have
4   thrived in those environments.  You went on to wonderful jobs.
5   And it is a tragedy that you got sucked into the behavior that
6   was endemic on the desks where you worked.  I know that you
7   were a substantial participant in the crime, but that at some
8   point you tried to convince two of your codefendants to stop
9   committing the crime.  And I think that speaks volumes to your
10  character, as well as your history.
11         And I believe that you, since your crime, have led a
12  life of complete probity, and that you have fully accepted
13  responsibility for your wrongs.
14         I don't believe individual deterrence is needed here;
15  I'm sure you've already been deterred individually.  General
16  deterrence is furthered by a sentence of probation where your
17  cooperation has been so extensive and so helpful to convicting
18  others who committed these crimes.
19         Similarly, I think that the goal of punishment has
20  already been effectuated, and that a sentence of probation will
21  put your sentence at a level that is appropriate vis-a-vis
22  others who have cooperated.
23         If you could stand now for sentencing, please.
24         I sentence you to one year of probation for the
25  reasons stated by your attorney, rather than the two suggested

1   by probation.  I impose a fine of $1,000.
2           The government has not yet spoken to restitution.  Did
3   you want to speak to that?  That as I understand it, full
4   restitution has been made.
5           MS. TULLEY:  You're correct, your Honor.  Full
6   restitution has been made.
7           THE COURT:  So none need be made now.
8           MS. TULLEY:  Correct.
9           THE COURT:  All right.  Thank you.
10          No forfeiture is needed.  I impose the $100 special
11  assessment, which is mandatory.
12          You may sit down while I read the conditions of
13  probation.
14          The standard and mandatory conditions of probation
15  will apply.  In addition, you must provide your probation
16  officer with access to any requested financial information.
17  You must not incur new credit charges or open additional lines
18  of credit without the approval of your probation officer,
19  unless you have paid the fine, as well as the mandatory special
20  assessment.  I suspend the drug testing condition based on my
21  determination that you do not pose a risk of future substance
22  abuse.
23          Are there outstanding charges to be dismissed?
24          MS. TULLEY:  No, your Honor.
25          THE COURT:  If there's nothing further, then I will

```
DANVWRIS                                        Sentence
```

1  read Mr. Wright his appeal rights.

2          MR. KOBRE:  Nothing further.  Thank you, your Honor.

3          THE COURT:  Mr. Wright, I read every defendant his

4  appeal rights, and I'll read you yours now.

5          You can appeal your conviction if you believe that

6  your guilty plea was somehow unlawful or involuntary or if

7  there is some other fundamental defect in the proceedings that

8  was not waived by your guilty plea.  You have a statutory right

9  to appeal your sentence under certain circumstances.

10         With few exceptions, any notice of appeal must be

11 filed within 14 days of judgment being entered in the case.  If

12 you are not able to pay the cost of an appeal, you may apply

13 for leave to appeal *in forma pauperis*.  If you request, the

14 Clerk of the Court will prepare and file a notice of appeal on

15 your behalf.

16         If there's nothing further, we're adjourned.

17         MR. KOBRE:  Nothing.

18         THE COURT:  Wish you good luck.

19         MR. KOBRE:  Thank you, your Honor.

20         MR. CASEY:  Thank you, your Honor.

21         THE DEFENDANT:  Thank you, your Honor.

22         THE COURT:  Thank you.

23                          *   *   *

24

25